UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| VALMONT INDUSTRIES, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 3:23-cv-01207 |
| BETTER METAL, LLC, | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION

Before the Court in this patent infringement action is Better Metal, LLC's ("Better Metal") Motion to Dismiss Plaintiff Valmont Industries, Inc.'s ("Valmont") First Amended Complaint (Doc. No. 25), which has been fully briefed and is ripe for review (see Doc. Nos. 26, 33, 34). The Court heard oral argument on May 30, 2024. For the following reasons, Better Metal's Motion will be granted in part and denied in part.

**I.  BACKGROUND AND FACTUAL ALLEGATIONS[1]**

Valmont owns four patents related to tower constructions: United States Patent Nos. 10,316,511 ("the '511 Patent"); 10,590,641("the '641 Patent"); 10,968,623 ("the '623 Patent"); and 11,274,435 ("the '435 Patent") (collectively, the "Asserted Patents"). (See Doc. No. 21 ¶ 1). The '511 Patent, '641 Patent, and '623 Patent are entitled "Bolt Calibrated Angle Mainstay For Tower Construction And Method For Use."[2] (See Doc. Nos. 21-1, 21-2, 21-3). The '435 Patent is entitled "Bolt Calibrated Angle Mainstay Wall Connection System And Method For Use."  (See

---

[1] The Court draws the facts in this section from the First Amended Complaint (Doc. No. 21) and assumes the truth of those facts for purposes of ruling on the instant motion. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

[2] The '641 Patent is a continuation of the '511 Patent, and the '623 Patent is a continuation of the '641 Patent.

Doc. No. 21-4).

The Asserted Patents describe the significance of a "bolt calibrated angle mainstay" for tower constructions:

> Installing and constructing a vertical tower frame involves a significant number of man hours. In particular, large amounts of man hours are required to properly, taper vertical towers during construction while keeping horizontal tower elements level. This is because bending and adjusting the heavy, metal members of a tower is difficult and imprecise.
>
> Current universal leg connection requires some form of an external force to physically move the frame to a desired taper. This external force can come from many devises (cranes, come-along, ropes and pulleys, or human exertion). These methods are bulky, expensive, and typically imprecise. Other designs use multiple holes to accomplish different tapers. These require precise measurements before installation and do not allow for a universal range of adjustment.

(See, e.g., Doc. No. 21-1 at col. 1, ll. 16–33). At a high level, Valmont's patented inventions include a "duel locking system" that allows users "to adjust a steel frame" on a tower leg, while also keeping the frame "level without additional equipment." (Id. at Abstract). As relevant here, each Asserted Patent claims (in claim 1)[3] an apparatus or system comprising two brackets. These brackets are described as an "upper bracket element" and "lower bracket element" in the '511 and '435 Patents; a "first bracket element" and "second bracket element" in the '623 Patent; and an "upper bracket assembly" and "lower bracket assembly" in the '641 Patent. (See Doc. No. 21-1 at col. 4, l. 42; col. 5, line 7; Doc. No. 21-2 at col. 4, ll. 25, 56; Doc. No. 21-3 at col. 4, ll. 21, 39; Doc. No. 21-4 at col. 6, ll. 12, 23).

The operative First Amended Complaint alleges that "[u]pon information and belief," Better Metal makes brackets and antenna mounts that infringe claim 1 of each of the Asserted

---

[3] "The claims of a patent are concise, formal definitions of the invention that appear at the end of the patent document in separately numbered paragraphs. A patent claim marks the boundaries of the invention in a way similar to a legal description in a deed specifies the boundaries of land." See Complex Litigation Committee of the American College of Trial Lawyers, Anatomy of a Patent Case, at *xxi* (4th ed. 2021).

Patents (collectively, "the Accused Products"). (See Doc. No. 21 ¶ 19). Exhibit 5 to the First Amended Complaint depicts technical drawings of a Better Metal "1BVM-Series" product that may have been installed at an AT&T cell site in Houston, Texas. (See Doc. No. 21-5; see also Doc. No. 21 ¶ 51). Valmont alleges that this Accused Product and its components, including the "Tower Leg Attachment" and "V-Mount for Lattice Tower Attachment" identified in the drawings, practice each limitation of claim 1 for each of the four Asserted Patents. (See Doc. No. 21 ¶¶ 20–50).

On May 30, 2023, Valmont sent Better Metal a letter demanding that it cease and desist its infringing conduct, (see Doc. No. 41-1), but Better Metal allegedly did not respond. (Doc. No. 21 ¶ 53). As a result, Valmont brought this lawsuit against Better Metal for direct infringement, willful infringement, induced infringement, and contributory infringement of claim 1 of each Asserted Patent. (See Doc. No. 21). Better Metal has now moved to dismiss all these claims under Federal Rule of Civil Procedure 12(b)(6). (See Doc. No. 25).

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), the complaint must include a "short and plain statement of the claim showing that the pleader is entitled to relief." Ryan v. Blackwell, 979 F.3d 519, 524 (6th Cir. 2020) (quoting Fed. R. Civ. P. 8(a)(2)). When determining whether the complaint meets this standard, the Court must accept the complaint's factual allegations as true, draw all reasonable inferences in the plaintiff's favor, and "take all of those facts and inferences and determine whether they plausibly give rise to an entitlement to relief." Doe v. Baum, 903 F.3d 575, 581 (6th Cir. 2018); see also Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009). Moreover, the Court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002) (quoting Scheuer v. Rhodes, 416 U.S. 232 (1974)); see

3

also Bot M8 LLC v. Sony Corp. of Am., 4 F.4th 1342, 1353 (Fed. Cir. 2021) (noting that, in patent infringement cases, "[t]he level of detail required in any given case will vary depending upon a number of factors, including the complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the allegedly infringing device"). And "[w]hile the complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions" or "a formulaic recitation of a cause of action's elements[.]" Blackwell, 979 F.3d at 524 (internal quotation marks omitted) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

## III. ANALYSIS

Better Metal argues that the Court should dismiss Valmont's claims for direct infringement, willful infringement, induced infringement, and contributory infringement of claim 1 of the four Asserted Patents. The Court will address these arguments separately below.

### A. Direct Infringement

For a direct infringement claim, Valmont must allege facts showing that Better Metal "without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent." 32 U.S.C. § 271(a). It is well settled that Valmont is not required to "prove its case at the pleading stage." Bill of Lading, 681 F.3d at 1329 (citing Skinner v. Switzer, 562 U.S. 521, 529 (2011)). Nor is Valmont required "to plead facts establishing that each element of an asserted claim is met." See Nalco Co. v. Chem-Mod, LLC, 883 F.3d 1337, 1347 (Fed. Cir. 2018) (citation omitted). Instead, Valmont need only allege sufficient facts to place Better Metal "on notice of what activity . . . is being accused of infringement." Lifetime Indus., Inc. v. Trim-Lok, Inc., 869 F.3d 1372, 1379 (Fed. Cir. 2017) (quoting K-Tech Telecomms., Inc. v. Time Warner Cable, Inc., 714 F.3d

1277, 1284 (Fed. Cir. 2013)).

Better Metal argues that the First Amended Complaint fails to state a claim for direct infringement because it: (1) improperly relies on conclusory statements that Better Metal infringes each of the four Asserted Patents, and (2) "does not identify, at a minimum, *any* accused device or system having both of the two separate bracket assemblies necessary to infringe every claim in the patents-in-suit." (See Doc. No. 26 at 7–12). Thus, according to Better Metal, Valmont's direct infringement claims should be dismissed because the First Amended Complaint "does not provide Better Metal with *any* notice of exactly what system or device is alleged to infringe any of" the claims in the Asserted Patents. (See id. at 7). The Court disagrees.

As an initial matter, the parties agreed during oral argument that this case involves relatively "simple technology." Although neither party briefed the issue, the Court likewise agrees that this case involves simple technology because there are only four patent claims at issue, the First Amended Complaint identifies the alleged Accused Products by name and picture, and the alleged Accused Products and patented inventions embody relatively simple mechanical technology. Where, as here, the case involves simple technology, the Federal Circuit has held that "a conclusory allegation [that] the products met 'each and every element of at least one claim,' paired with pictures of the accused product, [is] enough under the plausibility standard of Twombly and Iqbal to provide fair notice of the infringement alleged." Gamevice, Inc. v. Nintendo Co., Ltd., No. 18-cv-01942-RS, 2018 WL 5310792, at *2 (N.D. Cal. Aug. 6, 2018) (quoting Disc Disease Solutions Inc. v. VGH Solutions, Inc., 888 F.3d 1256, 1260 (Fed. Cir. 2018)); see also Repairify, Inc. v. Keystone Automotive Indus., Inc., 610 F. Supp. 3d 897, 901 (W.D. Tex. 2022).

Following the Federal Circuit's guidance in Disc Disease, the Court finds that the First Amended Complaint's allegations and embedded images are sufficient to place Better Metal on

notice of what activity is being accused of infringement. Each count in the First Amended Complaint recites the language of claim 1 of an Asserted Patent, alleges that the Accused Products practice that claim, and includes "technical drawings" of Better Metal's 1BVM-SERIES product and its components (including the "Tower Leg Attachment" and "V-Mount for Lattice Tower Attachment") that allegedly show that they perform at least some of the requirements of claim 1. These allegations are sufficient, at the pleading stage, to identify the Accused Products and state a plausible claim of direct infringement. See Disc Disease, 888 F.3d at 1260; see also, e.g., Sleep Number Corp. v. Sizewise Rentals, LLC, No. ED CV 18-00356-AB (SPx), 2018 WL 5263065, at *3 (C.D. Cal. June 26, 2018).

At this time, the Court also disagrees that Valmont's direct infringement claims should be dismissed because they fail to identify any Accused Product "having both of the two separate bracket assemblies necessary to infringe every claim in the patents-in-suit." (See Doc. No. 26 at 8). The crux of Better Metal's argument is that Valmont's patented "dual locking system" in claim 1 of each Asserted Patent requires an "upper" or "first" bracket that is "separate" and "structurally distinct" from the "lower" or "second" bracket. Better Metal contends that because the First Amended Complaint and Exhibit 5 only depict Accused Products with brackets that look identical to each other, Valmont has not provided notice regarding how those Accused Products could possibly support a claim for direct infringement. Even if Better Metal were factually correct, this argument reflects a merits dispute about how the Court should interpret the terms "dual locking system," "upper bracket," and "lower bracket." But as noted above, Valmont only needs "to show that the Accused Products do what [Valmont's] patents do, to point to specific claims they practice, and allege that they follow all of the limitations of those claims." Sleep Number, 2018 WL 5263065, at *5; see also North Star Innovations Inc. v. Kingston Tech. Co., Inc., No. SA CV 17–

01833–DOC (DFMx), 2018 WL 3155258, at *2 (C.D. Cal. May 7, 2018) ("Courts have generally found that where a plaintiff has identified particular product lines, a defendant has been adequately put on notice of the specific products alleged to infringe."). "To require anything more at this stage of the case would require the equivalent of infringement contentions, which is more than the law demands." Align Tech., Inc. v. 3Shape A/S, 339 F. Supp. 3d 435, 446 (D. Del. 2018) (citations omitted); see also Genedics, LLC v. Meta Co., No. 17-1062-CJB, 2018 WL 3991474, at *15 (D. Del. Aug. 21, 2018) (denying Rule 12(b)(6) motion even though "[i]t may later turn out that this is not the right construction for the term at issue, or that the accused products do not meet this limitation for other reasons").

To be sure, Better Metal may ultimately prevail on this issue on summary judgment or at trial (where it will have the benefit of discovery and a more substantial factual record) by showing that the Accused Products do not, in fact, directly infringe any of the Asserted Patents. But taking the allegations in the First Amended Complaint as true and drawing all reasonable inferences in Valmont's favor, as the Court is required to do on a motion to dismiss, the Court finds that Valmont sufficiently alleged facts giving rise to plausible claims of direct infringement.

B.    Willful Infringement

Better Metal also challenges the sufficiency of Valmont's allegations of willful infringement. (See Doc. No. 26 at 19–22). There is no separate cause of action for willful infringement, but 35 U.S.C. § 284 provides district courts the "discretion to award enhanced damages against those guilty of patent infringement." Halo Elecs. Inc. v. Pulse Electronics, Inc., 579 U.S. 93, 110 (2016). The Supreme Court in Halo held that while courts should "take into account the particular circumstances of each case in deciding whether to award [enhanced] damages" for patent infringement, "such punishment should generally be reserved for egregious cases typified by willful misconduct." Id. at 106.

There are "no binding appellate decisions [that] discuss the pleading requirements for a willful infringement claim," but some district courts "have reasoned that to survive a motion to dismiss, a plaintiff must plausibly plead knowledge of the patent and knowledge of infringement." BSD Crown, LTD. v. Amazon.com, Inc., 684 F. Supp. 3d 993, 999 (N.D. Cal. July 27, 2023) (citations and internal quotation marks omitted); see also, e.g., John Keeler & Co., Inc. v. Heron Point Seafood, Inc., No. 1:14 CV 1652, 2016 WL 6839615, at *4 (N.D. Ohio July 8, 2016). Other courts have described a three-part test, in which the plaintiff claiming willful patent infringement "must allege facts plausibly showing that the accused infringer: (1) knew of the patent-in-suit; (2) after acquiring that knowledge, it infringed the patent; and (3) in doing so, it knew, or should have known, that its conduct amounted to infringement of the patent." ACQIS LLC v. Wiwynn Corp., 614 F. Supp. 3d 499, 503 (W.D. Tex. July 12, 2022) (citations and internal quotation marks omitted); see also Välinge Innovation AB v. Halstead New England Corp., No. 16-1082-LPS-CJB, 2018 WL 2411218, at *13 (D. Del. May 29, 2018). Regardless, at the pleading stage, "[m]ere conclusory allegations of knowledge and infringement are not enough to plausibly allege the level of 'egregious[ness]' required under Halo." Susan McKnight, Inc. v. United Indus. Corp., 273 F. Supp. 3d 874, 881 (W.D. Tenn. 2017).

The First Amended Complaint alleges that "[o]n or about May 30, 2023, [Valmont] sent [Better Metal] a letter demanding that it cease and desist its infringing conduct. [Better Metal] did not respond, and [Better Metal] continues to infringe the Valmont Patents." (Doc. No. 21 ¶ 53; see also Doc. No. 41-1 (May 30, 2023 Letter)). These allegations, taken as true, are sufficient to raise a plausible inference that Better Metal knew of the Asserted Patents prior to the filing of this case, knew that it may be infringing on those patents, and continued to infringe even after receiving the May 30, 2023 notice letter. See Merrill Mfg. Co. v. Simmons Mfg. Co., 553 F. Supp. 3d 1297,

1307 (N.D. Ga. 2021). And these allegations, while sparse, go beyond the "mere conclusory allegations" that the court rejected in Susan McKnight, 273 F. Supp. 3d at 881. See Twombly, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely."). Accordingly, Valmont has pled sufficient facts to support a plausible claim for willful infringement.

### C. Indirect Infringement

Better Metal next argues that the Court should dismiss Valmont's claims for indirect infringement because the First Amended Complaint fails to allege any facts to support a plausible claim for either induced infringement or contributory infringement of any of the four Asserted Patents. (See Doc. No. 26 at 12–18). The Court agrees.

#### 1. Induced Infringement

Induced infringement is a form of indirect infringement that occurs when the defendant "actively induces infringement of a patent." 35 U.S.C. § 271(b). "For an allegation of induced infringement to survive a motion to dismiss, a complaint must plead *facts* plausibly showing that the accused infringer 'specifically intended [another party] to infringe [the patent] and knew that the [other party]'s acts constituted infringement.'" Lifetime Indus., 869 F.3d at 1379 (emphasis added) (quoting Bill of Lading, 681 F.3d at 1339).

Better Metal argues that Valmont's induced infringement claims are devoid of factual allegations and recite nothing more than the requisite legal elements. (Doc. No. 26 at 14–17). This argument is well taken, as the First Amended Complaint's sole allegation of induced infringement is as follows:

> Defendant has indirectly infringed and continues to indirectly infringe the ['511, '623, '641, and '435 Patents], in violation of 35 U.S.C. § 271(b) and (c), by actively inducing and/or contributing to direct infringement of the ['511, '623, '641, and

9

Case 3:23-cv-01207    Document 43    Filed 06/10/24    Page 9 of 12 PageID #: 385

> '435 Patents] by its customers. Defendant has engaged in such inducement and/or contributory infringement having knowledge of the ['511, '623, '641, and '435 Patents]. Defendant also knew or should have known that their actions would induce direct infringement by others and intended that their actions would induce direct infringement by others.

(Doc. No. 21 ¶¶ 56, 63, 70, 77). Aside from these legal conclusions, Valmont does not plead any facts from which the Court may infer Better Metal "specifically intended" a third party to infringe Valmont's patents. See, e.g., Inhale, Inc. v. Gravitron, LLC, No. 1-18-CV-762-LY, 2018 WL 7324886, at *3 (W.D. Tex. Dec. 10, 2018) (holding that plaintiff's "induced infringement claim entirely lacks factual allegations of third-party infringement, and, therefore, fails to raise a plausible inference that [the defendant] intended another party to infringe and knew of that party's infringement"). Nor can the Court plausibly infer that Better Metal induced third-party infringement merely because other entities are listed on the technical drawings in Exhibit 5. (See Doc. No. 33 at 13–14). Accordingly, the Court will grant Better Metal's motion to the extent it seeks dismissal of Valmont's induced infringement claims.

2. Contributory Infringement

Contributory infringement is another form of indirect infringement that occurs when the defendant "offers to sell or sells . . . a component of a patented machine, manufacture, combination or composition . . . constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use." 35 U.S.C. § 271(c). To state a claim for contributory infringement, the plaintiff must plead facts and allow an inference: "(1) that there is direct infringement, (2) that the accused infringer had knowledge of the patent, (3) that the component has no substantial noninfringing uses, and (4) that the component is a material part of the invention." Fujitsu Ltd. v. Netgear Inc., 620 F.3d 1321, 1326 (Fed. Cir. 2010). Better Metal argues that the First Amended Complaint fails to state a claim for contributory infringement

because, among other things, it does not allege that any Accused Product "has no substantial noninfringing uses." (See Doc. Nos. 26 at 17–18; 34 at 5).

As noted above, the First Amended Complaint alleges that Better Metal is "contributing to direct infringement of the ['511, '623, '641, and '435 Patents] by its customers," and "has engaged in . . . such contributory infringement having knowledge of the ['511, '623, '641, and '435 Patents]." (Doc. No. 21 ¶¶ 56, 63, 70, 77). Beyond these conclusory sentences, the First Amended Complaint lacks any factual allegations permitting the Court to reasonably infer whether Better Metal "offers to sell or sells" a component that is a material part of Valmont's patented invention and "can be used for purposes *other than infringement*." Bill of Lading, 681 F.3d at 1338. The Court will therefore grant Better Metal's motion to dismiss Valmont's contributory infringement claims for failing to plead the requisite elements. See, e.g., Inhale, Inc., 2018 WL 7324886, at *3.

3.  Leave to Amend

Although Valmont's indirect infringement claims suffer from technical pleading defects described above, it is theoretically possible that Valmont could amend the Complaint once again to plausibly state a claim for induced or contributory infringement. Thus, given the early stage of this case, "the general policy that courts should adjudicate cases on their merits rather than on technical pleading grounds," Broughton v. St. John Health Sys., 264 F. Supp. 2d 764, 775 (E.D. Mich. 2003), and Federal Rule of Civil Procedure 15(a)(2)'s requirement that "[t]he court should freely give leave [to amend] when justice so requires[,]" the Court finds it appropriate to dismiss Valmont's indirect infringement claims with an opportunity to amend. See Brown v. Matauszak, 415 F. App'x 608, 614 (6th Cir. 2011) (citation omitted) ("[I]f it is at all possible that the party against whom the dismissal is directed can correct the defect in a pleading or state a claim for relief, the court should dismiss with leave to amend."). To the extent Valmont would like a final opportunity to cure the deficiencies regarding its indirect infringement claims, it shall file a formal

motion to amend within fourteen (14) days of the filing of the accompanying Order.[4]

## IV. CONCLUSION

For the foregoing reasons, Better Metal's Motion to Dismiss (Doc. No. 25) will be granted in part, and Valmont's claims of contributory and induced infringement will be dismissed without prejudice to Valmont filing an optional motion for leave to amend within 14 days. The motion will be denied in all other respects.

An appropriate Order will enter.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE

---

[4] Valmont's throwaway argument in the concluding paragraph of its opposition brief, (see Doc. No. 33 at 15), is insufficient because it is well settled in the Sixth Circuit that a "request for leave to amend almost as an aside, to the district court in a memorandum in opposition to the defendant's motion to dismiss is . . . not a motion to amend." La. Sch. Emps. Ret. Sys. v. Ernst & Young, LLP, 622 F.3d 471, 486 (6th Cir. 2010).